**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

| | | |
|---|---|---|
| **DAMIAN PANTIN,** | ) | |
| | ) | **0:14-cv-62305-JIC** |
| **Plaintiff,** | ) | |
| | ) | **Judge Cohn** |
| **v.** | ) | |
| | ) | |
| **RIVERWALK FINANCIAL** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**FIRST AMENDED COMPLAINT**

NOW COMES the plaintiff, DAMIAN PANTIN, by and through his attorney, THOMAS GIBBONS, ATTORNEY AT LAW and for his Complaint against the defendant, RIVERWALK FINANCIAL CORPORATION, the plaintiff states as follows:

## I. PRELIMINARY STATEMENT

1. This is an action for actual and statutory damages for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), 15 U.S.C. §1692, et seq.

## II. JURISDICTION & VENUE

2. Jurisdiction arises under the FDCPA, 15 U.S.C. §1692 et seq., and pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1337.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## III. PARTIES

4. DAMIAN PANTIN, (hereinafter, "Plaintiff") is an individual who was at all relevant times residing in the City of Pembroke Pines, County of Broward, State of Florida.

5. The debt that Plaintiff was allegedly obligated to pay was a debt allegedly originally owed by Plaintiff to Washington Mutual and later assumed by Chase Bank (hereinafter, "the Debt").

6. The Debt was incurred for a credit card, on which charges were incurred primarily for the personal use of Plaintiff and/or for household expenditure.

7. At all relevant times, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

8. Upon information and belief, Defendant, RIVERWALK FINANCIAL CORPORATION purchased, acquired and/or otherwise obtained the Debt for the purpose of collection from Plaintiff.

9. Defendant is a business entity engaged in the collection of debt.

10. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

11. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

12. During the course of its efforts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

13. At all relevant times, Defendant acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

14. At all relevant times, Defendant acted through its duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

15. Upon information and belief, Defendant assigned the Debt to a third-party debt collector, QAR, for the purpose of collection from Plaintiff.

16. Upon information and belief, Defendant subsequently assigned the Debt to third-party debt collector, First Choice Assets LLC., (hereinafter, “FCA”) for the purpose of collection from Plaintiff.

17. FCA collected the Debt from Plaintiff for a period of time after which the Debt was returned to Defendant.

18. Upon information and belief, Defendant subsequently sold or assigned the Debt to Cavalry Portfolio Services, LLC., for the purpose of the continued collection of the Debt from Plaintiff.

19. CAVALRY PORTFOLIO SERVICES, LLC., (hereinafter, “CPS”) is a business entity engaged in the collection of debt within the State of New York. Defendant is registered as a limited liability company in the State of New York

20. The principal purpose of CPS’ business is the collection of debts allegedly owed to third parties.

21. CPS regularly collects, or attempts to collect, debts allegedly owed to third parties.

22. During the course of its efforts to collect debts allegedly owed to third parties, CPS sends to alleged debtors bills, statements, and/or other correspondence via the mail and/or

electronic mail and initiates contact with alleged debtors via various means of telecommunication, such as the telephone and facsimile.

23. At all relevant times, CPS acted as a debt collector as that term is defined by 15 U.S.C. §1692a(6).

## IV. GENERAL ALLEGATIONS

24. In 2007, Plaintiff opened a credit card account with Washington Mutual.

25. In or around April 2009, Plaintiff's credit card account with Washington Mutual was assumed, obtained, purchased, acquired and/or assigned to Chase Bank.

26. In or around May 2009, Plaintiff became delinquent on his credit card account with Chase Bank.

27. In or around May 2009, Plaintiff's credit card account with Chase Bank was assigned by Defendant to a collection agency named QAR for the purpose of collection.

28. In or around May 2009, Plaintiff engaged in communications with a representative of QAR, Timothy Smith, regarding a payment plan to pay down the Debt.

29. At or around the time the Debt was assigned to QAR for collection, the balance on the Debt was approximately $4,650.

30. During the course of his communications with QAR, an agreement was reached such that Plaintiff would tender to QAR monthly payments to pay off the Debt.

31. Pursuant to his payment arrangement with QAR, Plaintiff regularly tendered monthly payments towards the Debt.

32. Subsequent to his initial communication, upon information and belief, QAR changed its name to First Choice Asset, LLC. ("FCA")

33. From approximately May 2009 through June 2014, Plaintiff regularly tendered monthly payments towards the Debt – first to QAR and then to FCA.

34. Plaintiff tendered regular monthly payments ranging from $30 per month to $75 per month, depending on his financial circumstances.

35. The aforesaid monthly payments as delineated in the preceding paragraph were made in accordance with the agreement between Plaintiff and QAR then FCA and were made from in or around May 2009 through in or around May 2014.

36. In or around June 2014, Plaintiff received a telephone call from FCA during which time a representative from FCA informed Plaintiff that the Debt had been acquired by CPS.

37. At or around the same time, FCA informed Plaintiff that the balance on the Debt was approximately $809.00.

38. Plaintiff anticipated receiving a statement or correspondence from CPS but received neither.

39. On or about August 19, 2014, Plaintiff received a telephone call from CPS.

40. During the course or the aforementioned telephone call between CPS and Plaintiff on August 19, 2014, CPS informed Plaintiff that it was calling to collect the Debt.

41. During the course or the aforementioned telephone call between CPS and Plaintiff on August 19, 2014, CPS informed Plaintiff that the Debt had been delinquent since 2007.

42. During the course or the aforementioned telephone call between CPS and Plaintiff on August 19, 2014, CPS informed Plaintiff that the balance on the debt was $4,645.

43. During the course or the aforementioned telephone call between CPS and Plaintiff on August 19, 2014, Plaintiff informed CPS that he had been making regular, monthly payments towards the Debt and that the balance on the Debt was considerably less than $4,645.

44. During the course or the aforementioned telephone call between CPS and Plaintiff on August 19, 2014, CPS reiterated that the balance on the Debt was $4,645 and that if Plaintiff did not pay the Debt then it would forward the Debt to its attorneys and file a lawsuit against Plaintiff for the full balance outstanding on the Debt.

45. Defendant was aware that Plaintiff had been making payments against the Debt from in or around May 2009 through June 2014.

46. When FCA transferred the Debt back to Defendant for the continued collection of the Debt from Plaintiff, FCA informed Defendant of the balance of the Debt and the payments that had been made by Plaintiff.

47. When FCA transferred the Debt back to Defendant for the continued collection of the Debt from Plaintiff, FCA informed Defendant that the balance of the Debt was approximately $800.00

48. As of in or around June 2014, the balance on the Debt was approximately $800.00.

49. At the time FCA transferred the Debt back to Defendant for the continued collection of the Debt, Defendant was aware that the balance of the Debt was approximately $800.00.

50. When Defendant received the Debt back from FCA, Defendant was aware that the Debt had a balance of approximately $800.00.

51. Despite the reduction in the balance of the Debt, when Defendant sold the Debt to CPS for the continued collection of the Debt, Defendant failed to report to CPS the accurate balance of the Debt and failed to report to CPS that payments had been made by Plaintiff from May 2009 through June 2014.

52. Defendant informed CPS that the Debt had a balance of approximately $4,645.

53. Defendant did not report to CPS the monthly payments Plaintiff had made against the Debt.

54. In its attempts to collect the debt allegedly owed by Plaintiff, FCA violated the FDCPA, 15 U.S.C. §1692, in one or more of the following ways:

a. Used false, deceptive, misleading and unfair or unconscionable means to collect or attempt to collect an alleged debt in violation of 15 U.S.C. §1692e;

b. Falsely represented the character, amount, or legal status of any debt in violation of 15 U.S.C. §1692e(2)(A);

c. Communicated or threatened to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed in violation of 15 U.S.C. §1692e(8);

d. Used unfair and/or unconscionable means to collect or attempt to collect a debt in violation of 15 U.S.C. §1692f;

e. Was otherwise deceptive and failed to comply with the provisions of the FDCPA.

55. As a result of Defendant's violations as aforesaid, Plaintiff has suffered, and continues to suffer, personal humiliation, embarrassment, mental anguish and emotional distress.

## V. JURY DEMAND

56. Plaintiff hereby demands a trial by jury on all issues so triable.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, DAMIAN PANTIN, by and through his attorneys, respectfully prays for Judgment to be entered in favor of Plaintiff and against RIVERWALK FINANCIAL CORPORATION as follows:

a. All actual compensatory damages suffered;

b. Statutory damages of $1,000.00;

c. Plaintiff's attorneys' fees and costs;

d. Any other relief deemed appropriate by this Honorable Court.

Respectfully submitted,
**DAMIAN PANTIN**

By: s/ Thomas Gibbons
Attorney for Plaintiff

Dated: December 5, 2014

Thomas Gibbons (490334)
Thomas Gibbons, Attorney at Law
10320 Sandalfoot Boulevard, Unit 10
Boca Raton, FL 33428
Direct Dial: (954) 798-2516
Facsimile: (888) 418-1277
E-Mail: thomasjgibbons@gmail.com